UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANGELA ARMSTRONG,

                Plaintiff,

-vs-                                              Case No. 6:04-cv-505-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

_____/

## MEMORANDUM OF DECISION

      Plaintiff Angela Armstrong ["Armstrong"] appeals to the district court from a final

decision of the Commissioner of Social Security [the "Commissioner"] denying her application for

a period of disability and disability insurance benefits. See Docket No. 1 (complaint). For the

reasons set forth below, the Commissioner's decision is **REMANDED** to the Commissioner.

**I.**      **PROCEDURAL HISTORY**

      The Commissioner found Armstrong disabled, and awarded her disability benefits

beginning October 2, 1996. R. 16, 245. On an unspecified day in August 1999, however, the

Honorable Arthur W. Stacy, Administrative Law Judge, issued a decision terminating Armstrong's

benefits, presumably on continuing review. R. 16, 245.[1]

_____

[1]This information was before the Honorable James Ciaravino, Administrative Law Judge when he reviewed the record in this case, and Judge Ciaravino properly referred to the 1996 award of disability benefits and subsequent discontinuation in his decision. R. 16. Of course, the ALJ reviewed "all of the evidence of record" in determining that
(continued...)

Pending appeal of Judge Stacey's unfavorable decision to the Appeals Council,  Armstrong

protectively filed her current claims for disability insurance benefits (on December 18, 2000) and

for supplemental security income benefits (on December 27, 2000).  R. 45 - 47, 204 - 07.  In each

application, she claimed disability as of August 1, 1999.  R. 16 - 17, 45, 204.  On July 3, 2002 —

three years after Judge Stacy's August 1999 decision terminating Armstrong's benefits —  the

Appeals Council "upheld" Judge Stacy's decision.[2]  R. 16.  Two years after Armstrong had

protectively filed her new applications, the Honorable James Ciaravino, Administrative Law Judge

["the ALJ"], held a  hearing on those claims on December 19, 2002.  R. 243 - 276.  At the hearing,

non-attorney Robert Hicks, Jr. represented Armstrong, and Armstrong testified.  R. 243.  On

February 14, 2003, Judge Ciaravino issued his decision that Armstrong was not entitled to benefits

on her current claims.  R. 25.

Following a review of the medical and other record evidence, Judge Ciaravino found that

Armstrong suffered from the following severe impairments:  cervical spine degenerative disc

disease with related migraine headache syndrome, hypertension, obesity, anemia and history of

postpartum cardiomyopathy which was then stable.  R. 20.  The ALJ found that Armstrong

retained the residual functional capacity to perform her past relevant work as a cashier and fast

---

[1](...continued)
Armstrong was not disabled.  R. 16.  The record included the award of disability benefits, the decision to discontinue disability benefits, and pre-August 1999 medical records which the ALJ reviewed for "historical purposes only."  R. 16 - 17.  The Commissioner, however, included neither the original award of benefits nor Judge Stacy's decision discontinuing benefits in her certified record on appeal.

[2]Neither Judge Ciaravino nor Armstrong were aware of the July 3, 2002 Appeals Council decision four months later at the hearing before the ALJ on December 19, 2002.  R. 245.  Judge Ciaravino was correct, however, to later consider and refer to the Appeals Council's ruling in his decision.  R. 16.  The Commissioner, however, omitted the Appeals Council's July 3, 2002 decision from the certified record on appeal.

food worker.  R. 25, Findings 7 - 8.  As such, the ALJ concluded that Armstrong was not disabled.

R. 25, Finding 10.

On February 11, 2004, the Appeals Council denied review.  R. 6.  On April 12, 2004,

Armstrong timely appealed the Appeals Council's decision to the United States District Court.

Docket No. 1.  On October 7, 2004, Armstrong filed a memorandum of law in support of her

appeal.  Docket No. 18.  On December 13, 2004, the Commissioner filed a memorandum in

support of his decision that Armstrong was not disabled.  Docket No. 21.  The appeal is ripe for

determination.

## II.    THE PARTIES' POSITIONS

Armstrong assigns five errors to the Commissioner.  First, Armstrong claims that the ALJ's

assessment of her RFC is not supported by substantial evidence.  Second, Armstrong claims that

the ALJ erred by failing to give sufficient weight to the opinion of her treating physician.  Third,

Armstrong claims that the ALJ did not properly evaluate her subjective complaints of pain.

Fourth, Armstrong contends that the ALJ did not analyze her RFC in sufficient detail.  Finally,

Armstrong argues that the ALJ erred by failing to consider the impact of her obesity on her ability

to work.

The Commissioner argues that substantial evidence supports her decision to deny

disability.  First, the Commissioner argues that substantial evidence supports the ALJ's assessment

of Armstrong's RFC.  Docket No. 21 at 10 - 12.  Second, the Commissioner argues that a lack of

supporting evidence in the record demonstrates that she properly discounted the opinion of

Armstrong's treating physician.  Docket No. 21 at 13 – 14.  Third, the Commissioner argues that

-3-

Armstrong failed to produce evidence confirming the severity of her alleged pain.  Docket No. 21 at 15 – 17.  The Commissioner does not respond to Armstrong's fourth argument regarding analysis of her RFC.  Finally, the Commissioner argues that the ALJ properly considered Armstrong's obesity, and that her obesity was not shown to impose any additional limitations on her ability to work.  Docket No. 21 at 17 – 18.

## III.    THE STANDARD OF REVIEW

### A.    Affirmance

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine

reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.    Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405 (g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d

688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 -

92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[3] *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d

---

[3]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text.  In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);

*Sabo v. Commissioner of Social Security*,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. §

404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must

give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating

physician's opinion or report regarding an inability to work if it is unsupported by objective

medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted

treating physician's report where the physician was unsure of the accuracy of his findings and

statements).

       Where a treating physician has merely made conclusory statements, the ALJ may afford

them such weight as is supported by clinical or laboratory findings and other consistent evidence

of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see*

*also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion

does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based

on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and

extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.)

consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other

factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a

treating physician's opinion is generally entitled to more weight than a consulting physician's

opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to

"scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

### D.    The Five Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520 (b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520 (c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a

claimant's impairments do not prevent him or her from doing past relevant work, she is not

disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his or her

residual functional capacity, age, education, and past work) prevent him or her from doing other

work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must

consider any medically severe combination of impairments throughout the disability determination

process.  42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole

person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v.

Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-

articulated findings as to the effect of a combination of impairments when determining whether an

individual is disabled.  *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the

Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The claimant must

prove disability on or before the last day of his or  her insured status for the purposes of disability

benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d

1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c).  If a claimant becomes disabled

after the claimant has lost insured status, his or her claim for disability benefits must be denied

despite the disability.  *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v.

Califano*, 574 F.2d 274 (5th Cir. 1978).

## E.  Other Work

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the

-12-

claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### 1.    Pain

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

-13-

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain

alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not,

by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

      **2.**     <u>**Credibility**</u>

     Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human*

*Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial

evidence).  A reviewing court will not disturb a clearly articulated credibility finding with

substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th

Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the

failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545

(11th Cir. 1988).

     A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*

*v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)

(although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V.   APPLICATION AND ANALYSIS

### A.   The Facts

#### 1.   Medical Facts Before Termination of Disability Benefits

Armstrong saw Michael Marion, M.D. on October 16, 1997.  Significant findings on physical examination revealed tenderness over the second extensor compartment of the left wrist, as well as evidence of nerve irritation in the left upper extremity.  She was diagnosed with extensor tendinitis of the left forearm and a possible nerve irritation in the left arm.  R. 102 - 03.

Armstrong was evaluated on July 23, 1998 by Orlando Hand Surgery Associates.  She was six weeks status post a left carpal tunnel injection.  She complained of increased numbness and tingling at the left index, long and ring fingertips, which was constant in nature and associated with night pain.  On physical examination, Hitchhiker's and Finkelstein's were mildly positive on the left, Tinel's was positive at the left cubital tunnel radiating to the long finger, Phalen's test was positive on the left at the index, long and ring finger.  The impression was mild left median nerve neuritis at the wrist with no electrodiagnostic evidence of carpal tunnel syndrome, left deQuervain stenosing tenosynovitits and flexor carpi radialis tendinitis.  R. 101.

An echocardiogram was performed on September 30, 1998 by Kishore Ranadive, M.D. The left ventricular systolic function was mildly impaired with an ejection fraction[4] of 40-45

---

[4] By way of comparison, the Court notes that a claimant will be found to meet Section 4.02B of the Listing of Impairments if she demonstrates a left ventricular ejection fraction of 30 percent or less, plus an inability to perform on an exercise test at a workload equivalent to 5 METs or less, plus marked limitation of physical activity, as demonstrated

(continued...)

percent, there was atypical motion of the apex and intraventricular septum and a trace of mitral and tricuspid regurgitation. R. 145. On November 20, 1998, Dr. Ranadive evaluated Armstrong. He noted she had a history of post partum dilated cardiomyopathy. She complained of palpitations and shortness of breath. R. 144. Armstrong was seen on January 29, 1999 because of chest pain. She also had a history of palpitations. R. 143. On March 5, 1999, Armstrong had an echocardiogram performed. The left ventricle appeared to be mildly dilated and atypical motion of the intraventricular septum was noted. There was hypokinesia of the left ventricle, the left ventricular ejection fraction was 40 percent and there was a trace of mitral regurgitation. R. 142.

### 2.   Medical Facts After Termination of Disability Benefits [5]

On August 6, 1999, Armstrong complained to Dr. Ranadive of sharp left-sided chest pain. R. 141. On September 29, 1999, Armstrong saw Lata Bansal, M.D. for frontal headaches with pressure. She was unable to sleep at night. R. 106. The headaches were a 9 out of 10 on a scale of 0 - 10. She was given a prescription of Esgic-Plus twice a day. R. 106. Armstrong saw Dr. Ranadive on October 8, 1999 because of left-sided weakness, numbness in her chest and atypical chest pain. R. 140.

---

[4](...continued)
by fatigue, palpation, dyspnea, or anginal discomfort on ordinary physical activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 4.02. A metabolic equivalent, or "MET," is the oxygen cost of energy expenditure measured at supine rest. Multiples of MET are used to estimate the oxygen cost of activity, *e.g.*, 3 to 5 METs for light work. STEDMAN'S MEDICAL DICTIONARY 591 (26th ed. 1990).

[5]Armstrong likely received disability benefits until at least August 1, 1999, the month in which Judge Stacy discontinued her benefits. R. 16, 56, 246 (ALJ notes Armstrong is "alleging onset of disability at the time of the termination, August 1, 1999"), *but see* R. 245 (ALJ guesses cessation of benefits was in June 1999). Armstrong's present applications seek disability and SSI benefits as of August 1, 1999. R. 16 - 17, 45, 204. The Commissioner should have prepared a complete record so that the reviewing court may determine whether, according to the Commissioner, Armstrong remained disabled until her August 1, 1999 application date.

On October 12, 1999, Armstrong underwent an echocardiogram.   Mild generalized hypokinesia of the left ventricle was present.  Left ventricular ejection fraction was at 40 percent. The Doppler echocardiogram analysis revealed mild mitral regurgitation.  The conclusion was that left ventricular systolic function was mildly impaired with an ejection fraction of approximately 40 percent, the left ventricle demonstrated mild generalized hypokinesia, and mild mitral regurgitation was present.  R. 139.

Dr. Ranadive saw Armstrong on October 29, 1999.  She complained of paresthesia and atypical chest pain.  R. 137.  Armstrong saw Carlos Chang, M.D. on November 17, 1999 because of weakness and numbness in the right side of her chest.  The diagnosis was cardiomyopathy and paresthesia.  R. 161.  On December 13, 1999, she complained of tingling in her hands and swelling in her hands and feet.  R. 160.  Armstrong saw Dr. Bansal for a neurological followup on December 16, 1999.  She had constant daily headaches in her whole head, but predominantly on the left side.  She complained of numbness on the left side associated with swelling and weakness. R. 105.

Dr. Ranadive saw Armstrong on May 16, 2000.  She complained of fatigue, left-sided paresthesia, chest pain and migraines.  The impression was fibromyalgia and migraine.  R. 134. Armstrong was admitted to Florida Hospital on May 24, 2000 with severely low hemoglobin and subsequently had a blood transfusion.  R. 107.  Her discharge diagnosis was severe iron deficiency anemia secondary to menorrhagia, postpartum cardiomyopathy, history of migraine headaches and menorrhagia with fibroids.  She was released on May 27, 2000.  R. 107.

Armstrong saw Dr. Ranadive on October 12, 2000.  She complained of weakness, shortness of breath and chest pain.  The impression was dilated non ischemic cardiomyopathy and costochondritis.  The doctor recommended Vioxx.  R. 131.

On December 11, 2000, Dr. Ranadive noted that Armstrong had post partum dilated cardiomyopathy and an echocardiogram that had revealed her left ventricular ejection fraction was 40 percent.  At initial diagnosis, the ejection fraction was less than 20 percent.  He stated she remained very symptomatic, and fell within the New York Heart Association Class III in terms of her symptoms.  R. 129.

Sam Ranganathan, M.D. evaluated Armstrong on April 16, 2001.  Armstrong stated that she had shortness of breath that made her unable to walk.  She had chest pain every day.  She had headaches, nausea and her sleeping was restless.  Dr. Ranganathan noted her last echocardiogram had an ejection fraction of 40 percent.  His impression was history of post partum cardiomyopathy (with improvement), iron deficiency and mild anemia.  R. 194 - 95.  On April 19, 2001, Armstrong saw Dr. Chang and complained of shortness of breath while she cleaned the house, and that she was only able to sleep on the right side of her body because the left side was swollen.  The doctor diagnosed her with left costochondritis.  R. 157.

M. delaCerna, M.D., a DDS physician, completed a Physical Residual Functional Capacity ("RFC") Assessment on May 1, 2001.  R. 148 - 55.  Without having examined Armstrong or reviewed any examining source statements regarding Armstrong's physical capacities, Dr. delaCerna opined that Armstrong could lift 10 pounds occasionally, less than 10 pounds frequently, stand or walk two to three hours in an eight-hour workday and sit about six hours in an

-18-

eight hour work day.  R. 149.  According to Dr. delaCerna, she could also occasionally climb, balance, stoop, kneel, crouch and crawl.  R. 150.  Dr. delaCerna noted Armstrong had consistent and credible symptoms, and that her ejection fraction had improved from 15 percent to 40 percent. R. 153.

On July 27, 2001, DDS physician Gloria B. Hankins, M.D., a general practice physician who received her medical degree from the University of Santo Tomas, completed another Physical RFC Assessment.  R. 163, 170.  After reviewing Armstrong's medical records, Dr. Hankins opined that Armstrong could lift 20 pounds occasionally, 10 pounds frequently, and could stand, walk or sit for about six hours in an eight hour workday.  R. 164.  Dr. Hankins also concluded that Armstrong had no limitations on her ability to push or pull and had no postural, manipulative, visual, communicative or environmental limitations. R. 165 - 168.  Dr. Hankins had neither examined Armstrong nor reviewed any examining source statements regarding Armstrong's physical capacities.  R. 169.

Armstrong saw Nema Criel-Comenencia, M.D. on March 11, 2002.  She complained of headaches and restless sleep at night.  R. 202.  On June 3, 2002, she complained of chest pain radiating into the left side, swollen hands, migraines, poor sleep and sensitivity to noise and light. R. 201.  Armstrong returned on June 18, 2002, where she complained of tightness of chest, poor sleep, swollen hands and feet and sensitivity to sunlight.  She also had recently "locked up" her elbows.  R. 200.  Armstrong had right-sided chest pain on August 8, 2002.  She had hand swelling and increased photosensitivity.  R. 199.

-19-

Florida Hospital admitted Armstrong on October 5, 2002 because of chest pain.  A stress test was negative.  An MRI of the cervical spine showed a small central disk protrusion at C4-5, C6-7 and minimal bulge protrusion at C5-6. R. 218.  An exam of her arm showed moderate focal stenosis of proximal left posterior cerebral artery.  R. 227.  The discharge diagnosis on October 9, 2002 was atypical chest pain, hypertension, postpartum nonischemic cardiomyopathy, migraines secondary to cervical disk compression and depression.  R. 218.

Armstrong saw Dr. Comenencia on October 21, 2002, and she complained of chest pain, migraines, nausea and sensitivity to sunlight and noise.  R. 198.  On November 8, 2002, she complained of headaches, nausea, lack of sleep and increased sensitivity to sunlight and noise. She stated that the only thing that helped was a dark room.  R. 197.

**B.**     **The Analysis**

1.     **Armstrong's Residual Functional Capacity**

The Court now address each of Armstrong's five arguments.  First, Armstrong argues that the Commissioner's assessment of her RFC was not based on substantial evidence.  Docket No. 18 at 7.  The Commissioner responds that substantial evidence supports the ALJ's assessment of Armstrong's RFC.  Docket No. 21 at 10 - 12.

Armstrong argues that the ALJ relied solely on the assessment of Gloria B. Hankins, M.D. in determining her RFC.  According to Armstrong, Dr. Hankins was the only physician who opined that Armstrong could perform light work.  Docket 18 at 8.  Dr. Hankins is a DDS

physician[6] who received her M.D. degree in general practice from the University of Santo Tomas.

R. 163, 170.  Dr. Hankins did not examine Armstrong, and did not review any examining source

statements regarding Armstrong's physical capacities.  R. 169.  Nevertheless, Dr. Hankins stated

detailed opinions, conclusions, inferences, or assumptions about Anderson's exertional abilities.

R. 164 - 68.  The ALJ may accord some weight to Dr. Hankins' opinions.

Armstrong also questions Dr. Hankins' June 2001 RFC assessment by pointing out that it

is inconsistent with the opinion of one of her treating physicians, Dr. Kishore Ranadive, M.D.,

F.A.C.C., of Orlando Heart Specialists, P.A.  According to his credentials, Dr. Ranadive is a board

certified cardiologist.  R. 129.  Dr. Ranadive described Armstrong in December 2000 as "very

symptomatic" and in the "New York Heart Association Class III in terms of her symptoms."  R.

129.  The Commissioner does not set forth the criteria for symptoms that fall within the "New

York Heart Association Class III," or explain why a specialist who has examined and treated

Armstrong is wrong in his opinion that she is "very symptomatic."  The contradiction between Dr.

Ranadive's opinion and Dr. Hankins' RFC assessment is stark.  The issue of according appropriate

weight between treating and consulting physicians is discussed below under Armstrong's second

issue.

Armstrong also argues that the ALJ failed to fully develop the record by questioning

Armstrong about the demands of her past relevant work.  Docket No. 18 at 9.  The record does

---

[6]The Commissioner does not ask treating physicians to complete RFC forms because the Commissioner has not "educated" them as to the implications of their choices.  Instead, the Commissioner relies on a review of the records by state agency ("DDS") physicians who are often of weaker credentials, without a present medical practice, and far less expensive.  Nothing, however, prevents a claimant from submitting in evidence RFC forms prepared by her treating physicians.

contain Armstrong's own "Work History Report," R. 77 - 84, which contains Armstrong's general descriptions of the demands of her past relevant work. The ALJ explicitly relied upon the report in concluding that "her position as a fast-foods cook/cashier involved lifting 20 pounds and alternating walking and standing the majority of the day." R. 23 - 24. Of course, it never hurts for an ALJ to inquire on remand about the demands of a claimant's previous jobs in order to assess her ability to do her past work.[7]

### 2.    Weighing the Treating Physician's Opinion

Second, Armstrong argues that the ALJ failed to give sufficient weight to the opinion of her treating cardiologist, Kishore Ranadive, M.D, F.A.C.C. Docket No. 18 at 10. The Commissioner responds that a lack of supporting evidence in the record demonstrates that she properly discounted the opinion of Armstrong's treating physician. Docket No. 21 at 13 – 14. Armstrong is correct.

The Court assumes (as did the Commissioner, Docket No. 21 at 13) that Armstrong seeks greater weight for the opinions in Dr. Ranadive's December 11, 2000 letter, which reads in pertinent part as follows:

To Whom It May Concern:

Mrs. Angela Armstrong is presently under my medical care. She is a 34-year-old woman with post partum dilated cardiomyopathy on an echocardiogram done earlier this year. Her left ventricular ejection fraction is 40%. Her heart size, however, is normal. After she was diagnosed with post partum cardiomyopathy, she was noted to have an ejection fraction of less than 20%. She remains very symptomatic and is

---

[7]The Court sympathizes with the ALJs. They face enormous backlogs and impossible expectations. According to a July 2005 presentation by a former Social Security Administration Chief ALJ (now a magistrate judge) at a Federal Judicial Center workshop for judges, the Commissioner now expects ALJs to hear and resolve 50 - 55 cases per month with opinions.

presently in the New York Heart Association Class III in terms of her symptoms.
From a cardiovascular standpoint, she is disabled.

If I can be of any further assistance, please do not hesitate to contact my office.  With
warm regards.

Sincerely,

/s/

Kishore Ranadive, M.D., F.A.C.C.

R. 129.

The record also contains medical records describing Dr. Ranadive's treatment of

Armstrong from August 15, 1997 through January 15, 2001.  R. 3, 128 - 47.  Dr. Ranadive's letter

is merely a summary assessment of the severity of her symptoms and general capacity.  Dr.

Ranadive opines that her ejection fraction improved from 20 percent to 40 percent; that her heart

was of normal size; that she was "very symptomatic;" and that she was in the New York Heart

Association Class III.[8]  Dr. Ranadive's opinions are based on his professional clinical judgment

and clinical examination of Armstrong.  Substantial weight must be given to those opinions about

the nature and severity of Armstrong's impairments and abilities.  Those opinions are neither

unsupported by objective medical evidence, nor wholly conclusory.[9]  It makes no difference that

---

[8]According to Armstrong's brief on appeal, Class III comprises patients with "cardiac disease resulting in
marked physical limitations, are comfortable at rest, less than ordinary activity causes fatigue, and experience
palpitation, dysthmia and/or anginal pain."  Docket No. 18 at 8.

[9]A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.
Even if Dr. Ranadive's opinion had not been entitled to controlling weight, the ALJ must nevertheless weigh his
medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature
and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the
record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the
opinion.

Dr. Ranadive's one-page letter does not itself describe the medical evidence that supports his conclusions.

The Commissioner is correct that opinions on ultimate issues — such as whether a claimant is disabled under the Commissioner's regulations — are reserved for the Commissioner.[10] Docket No. 21 at 14. One of the opinions in Dr. Ranadive's letter is that Armstrong "is disabled." R. 129. The ALJ may afford that conclusion such weight as the ALJ finds to be supported by Dr. Ranadive's clinical and laboratory findings and other consistent evidence of Armstrong's impairments.

### 3.     Evaluating Armstrong's Pain

Third, Armstrong contends that the ALJ failed to properly evaluate her subjective complaints of pain. Docket No. 18 at 11. The Commissioner responds that Armstrong failed to produce evidence confirming the severity of her alleged pain. Docket No. 21 at 15 – 17. Armstrong's argument on this point has merit.

In assessing Armstrong's subjective complaints of pain, the ALJ used essentially "boilerplate" language:

> The undersigned has considered the claimant's testimony in conjunction with the medical evidence of record and finds that her testimony was credible to the extent that her symptoms are reasonably related to the impairments that she alleges. However, her allegations as to the severity of her symptoms are somewhat

---

[10]The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

> exaggerated and not consistent with the medical evidence. The undersigned is persuaded the claimant's subjective complaints of pain and functional limitations are beyond those which could reasonably be expected in terms of intensity, frequency, or duration. Accordingly, the claimant's testimony describing subjective symptoms and limitations is not credible of a disabling impairment.

R. 22.

This description is not sufficient to allow meaningful review. The ALJ does not identify the pain testimony at issue, the medical evidence he compared it to, or the reason why he found at least some of the former exaggerated when compared to the latter. It may be that the ALJ did, in fact, properly discount Armstrong's testimony. For example, Armstrong's representative informed the ALJ that he could not find any record evidence to corroborate Armstrong's complaints of arthritis pain. R. 275. Presumably, this would explain the ALJ's failure to credit such complaints. However, the ALJ did not include this information in his opinion, and the Court cannot ascertain why the ALJ discounted Armstrong's allegations of pain, including chest pain and headaches. Other physicians seem to have given greater credence to Armstrong. For example, Dr. delaCerna described Armstrong's symptoms as consistent and credible. R. 153. Remand is required for the ALJ to address Armstrong's pain complaints — and the reasons he disregarded them — with greater specificity.

### 4.     RFC Analysis in Detail

Fourth, Armstrong contends that the ALJ did not analyze her RFC in sufficient detail. The Commissioner does not respond to Armstrong's fourth argument. In any event, a thorough discussion of issues pertaining to Armstrong's RFC appears under issues one and two above.

**5.      Obesity**

Fifth, Armstrong argues that the ALJ failed to consider the impact of her obesity on her ability to work.  Docket 18 at 14.  The Commissioner argues that the ALJ properly considered Armstrong's obesity, and that her obesity was not shown to impose any additional limitations on her ability to work.  Docket No. 21 at 17 – 18.  As Armstrong herself notes, the ALJ found her obesity to be a severe impairment.  R. 20.  Further, the ALJ made at least one additional reference to Armstrong's obesity, when discussing her shortness of breath.  R. 21.  There are no instances in the record where the ALJ explicitly declined to consider the impact of Armstrong's obesity.  Armstrong herself does not point to any portion of the ALJ's opinion where the ALJ would (or should) have reached a different conclusion if he had taken her obesity into account.  Nevertheless, the Court need not resolve this issue in light of the remand.

**VI.      CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED** to the Commissioner of Social Security under Sentence Four for further proceedings not inconsistent with this decision.  The Clerk shall a judgment.

**DONE AND ORDERED** this 22nd day of July, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

-26-

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL               33602

The Honorable James R. Ciaravino
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817